(No. 88-CC-1152–

MOORE BUSINESS SYSTEMS, Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Order filed March 22, 1991.*

POPE & JOHN, for Claimant.

ROLAND W. BURRIS, Attorney General (JOHN R. BUCKLEY, Assistant Attorney General, of counsel), for Respondent.

ORDER

MONTANA, C.J.

Claimant filed a motion for summary judgment on May 9, 1989. Therefore we entered an order granting the State until November 24, 1989, to respond. No response was filed. On July 3, 1990, Claimant filed a request for a ruling on the motion for summary judgment. Still the

State filed no response. Finally on January 7, 1991, Claimant filed another request for a ruling on its motion for summary judgment.

As of this date the State has filed no opposition to the motion for summary judgment which was filed on May 9, 1989.

With no opposition from the State to the motion filed by Claimant, the court holds that there are no material issues of fact and that based upon the following uncontested facts, Claimant is entitled to an award as a matter of law:

1. On July 8, 1986, Claimant, hereinafter referred to as "Moore," submitted a written response to the Illinois Department of Employment Security's ("IDES") invitation to Bid-requisition #P-8429 for the printing and processing of the following forms: AA-49 (4249) Statement of Account; BEN-118R (4059) Statement of Amount Due for Benefits Paid; and CTS-0003 (4488) Notice of File Delinquent Contribution and Wage Reports.

2. On August 21, 1986, IDES advised Moore in writing that it had tentatively been awarded the contract under bid-requisition #P8429.

3. On October 29, 1986, pursuant to its agreement to award Moore the contract, IDES submitted a purchase order (number PP3438) for the printing and processing of Forms AA-49, BEN 118R and CTS-0003. Moore's bid response specified several prices depending upon the volume ordered and whether the purchaser selected a special window option. The price and terms selected by IDES were the lowest quantity of forms at the higher cost. IDES also selected the special window option.

4. The purchase order, however, contained a discrepancy between the quantity of forms ordered and the total contract price. The purchase order specified the lowest quantity of forms at the highest price or 200 thousand AA49 (4240) forms at $160.43 per thousand; 40 thousand BED118R (4059) forms at $271.39 per thousand and 300 thousand CTS-0003 (4488) forms at $204.65 per thousand for a total of $104,336.60. The total contract price according to the purchase order was $96,800.00. When Moore contacted IDES regarding the discrepancy IDES agreed that an error had been made and stated that the contract should be governed by the language in the purchase order which specified the lowest quantity at the highest price and the bid submitted by Moore.

5. On December 5, 1986, IDES submitted a data processing schedule for the period from February, 1987, through January, 1988.

6. Moore printed the necessary forms and blocked off the data processing time based upon the schedule provided by IDES on December 5, 1986.

7. On or about February 14, 1987, IDES began to input data for the processing of forms.

8. In June 1987, Nathan E. Tindall, Acting Manager, Procurement, for the Illinois Department of Employment Security terminated the contract with Moore and requested that Moore prepare an invoice for the remainder of the contract, suggesting that the contract has expired in June 1987, despite the fact that IDES provided a data processing schedule which called for services through January 1988.

9. Moore actually provided services for the period from February 14, 1987, through September 15, 1987.

10. On August 31, 1987, in response to that request Moore forwarded an invoice to IDES for the amount due under the remainder of the contract. Although Moore had both printed all of the forms necessary to perform the contract for the period from February 1987, through January 1988, and blocked off processing time for that entire period, the invoice submitted to IDES demanded payment for an amount less than what was due under the contract. The invoice submitted to IDES demanded payment only for the cost of the forms that had been printed and the balance of initial computer programming costs. The invoice does not seek payment for data processing costs, imaging costs, collation costs or distribution costs which would have been incurred had IDES not breached the contract.

11. The total amount due Moore less a discount for the cost of processing the forms remaining under the contract at the time of termination is $51,320.85.

12. On October 15, 1987, IDES advised Moore that it was unable to process Moore's claim under IDES's 1987 appropriation. IDES provided Moore with a lapsed appropriation with the Illinois Court of Claims.

13. On November 2, 1987, Moore filed its claim with the Illinois Court of Claims.

14. IDES has admitted that it entered into a contract with Moore for the printing and processing of forms. IDES had further admitted that it terminated the contract and that it was unable to process the Moore's claim for the amount due and owing under the contract under IDES's 1987 appropriation.

15. Moore was at all times ready to fulfill its obligation under the terms of the contract.

16. IDES's termination was without justification. At no time from June 1987 when IDES terminated the contract to the present time has IDES suggested that there were any problems with the product or services provided by Moore.

17. The sole basis for termination of the contract was IDES's alleged claim that the contract expired on June 30, 1987. Yet, the very schedule submitted by IDES to Moore for the processing of forms under Purchase Order PP3438 called for the processing of forms through January 1988.

18. Moore has made a demand upon IDES for payment for the amount due and owing under the contract which has been refused.

Accordingly, Claimant is awarded $51,320.85.